# United States District Court
# Central District of California

| | |
|---|---|
| GUSTAVO ESCAMILLA; and GREENWAY NUTRIENTS, INC. <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA; DEPARTMENT OF HOMELAND SECURITY; and DOES 1–50, inclusive <br><br> Defendants. | Case No. 2:17-cv-07748-ODW(MRWx) <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE [9]** |

## I.    INTRODUCTION

Plaintiffs Gustavo Escamilla ("Escamilla") and Greenway Nutrients, Inc., ("Greenway") filed this action against the Department of Homeland Security ("DHS") and the United States of America (collectively, "Defendants").    Based upon Defendants' actions in conjunction with a trademark infringement investigation, Plaintiffs assert various federal and state law claims for violations of civil rights, due process, and equal protection, in addition to claims for intentional and negligent infliction of emotional distress. (*See* Compl. ¶¶ 76–109, ECF No. 1.)  Plaintiffs also

request declaratory and injunctive relief. (*Id.* ¶¶ 110–112.) Defendants moved to dismiss the complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and failure to state a claim, pursuant to Rule 12(b)(6). (Mot., ECF No. 9.) For the reasons discussed below, the Court **GRANTS** Defendants' Motion to Dismiss with prejudice**.**

## II. FACTUAL BACKGROUND

On April 13, 2013, Greenway filed a civil action (the "Colorado action"), alleging trademark infringement and other claims against multiple defendants, including a subset of Greenway's own investors. (*See Greenway Nutrients, Inc. v. Blackburn*, Case No. 1:13-cv-13-1088-MSK-KMT (D. Colo.), Compl., ECF No. 1.) DHS officials subsequently contacted Plaintiffs in or about March 2015. (Compl. ¶ 13.) On March 3, 2015, Plaintiffs met with Shawn Gibson ("Gibson"), Operations Manager for the United States Immigration and Customs Enforcement ("ICE"), a DHS agency, and several other special agents. (Compl. ¶ 14; Mot. 3.) Gibson explained to Plaintiffs that the Greenway investor defendants in Plaintiffs' civil suit had already been subject to extensive investigation for criminal trademark infringement. (Compl. ¶¶ 17–18; Mot. 3.) He told them that, as of the meeting date, ICE and the United States Attorney's Office had recovered over $26 million in the investigation. (Compl. ¶ 18; Mot. 3.) He also informed Plaintiffs that they may be able to recover from an established victims' fund. (*Id.*) Plaintiffs allege that Gibson also promised them that the Kansas City U.S. Attorney's Office for the Western District of Missouri ("USAO-MO") agreed that Greenway would be added as a victim in the government's case and that they "would no longer ever need to worry about having to hire another private attorney . . . to pursue the accused suspects['] ongoing theft" of Greenway's products. (Compl. ¶¶ 19, 21.) In May 2015, Greenway's counsel in the Colorado action withdrew, and Greenway never retained new counsel. (*See Greenway Nutrients*, Case No. 1:13-cv-13-1088-MSK-KMT, ECF Nos. 137, 143.)

Escamilla again communicated with Gibson in June 2015, and Gibson responded that his team was continuing their investigation in relation to Plaintiffs' claims. (Compl., Ex. 5.) Escamilla reached out to DHS again on August 3, 2015, expressing anger and frustration about the length of the investigation. (*See id.*, Ex. 6.) Gibson responded, explaining his team was continuing their work and informing Escamilla that these accusatory emails were not helpful. (*Id.*) On August 17, 2015, the District Court of Colorado dismissed Greenway's suit without prejudice due to Greenway's failure to prosecute. (*Greenway Nutrients*, Case No. 1:13-cv-13-1088-MSK-KMT, Judg., ECF No. 148.)

Escamilla contacted Gibson again in October 2016 to complain about the Greenway defendant investors' continued infringement.[1] (*See* Compl., Exs. 7–8.) On October 28, 2016, Gibson notified Plaintiffs that—due to Plaintiffs' failure to prevail against the Greenway investors in the Colorado action—ICE and USAO-MO would no longer investigate the Greenway investors' product infringement. (*Id.* ¶ 27; Mot. 3.) Plaintiffs immediately protested this decision. (Compl. ¶ 28.) They contacted Gibson again on November 21, 2016, to inquire about the investigation against the Greenway investors and advise Gibson that Escamilla felt discriminated against for his status as "a Mexican-American small businessman . . . [not] represented by private legal counsel." (*Id.* ¶¶ 29–30.) Escamilla complained that he was being taken advantage of by DHS. (*Id.* ¶ 30.) Gibson responded that same day, clarifying that DHS could not "move forward with any investigation involving [Plaintiffs'] trademark until [Plaintiffs] resolve[d] this issue with the District Court in Colorado," because that decision in favor of the alleged infringers precluded them from filing charges. (*Id.*, Ex. 10.)

---

[1] It is unclear from the allegations and attached exhibits whether Gibson and the DHS ever responded to the messages sent by Plaintiff in early October. (*See* Compl. ¶ 26, Ex. 8.)

On April 11, 2017,[2] Plaintiffs notified Gibson that they "just discovered new and compelling evidence" regarding Michael J. Ryan, the former attorney for Greenway, and his "unlawful[] divulging, sharing, [and] . . . disclosing [of] Greenway'[s] confidential business information [and] trade secrets." (*Id.* ¶ 32; Mot. 3.) After receiving no response, Plaintiffs contacted DHS. (*See* Compl. ¶ 33.) Plaintiffs allege they filed a formal complaint with the DHS Office for Civil Rights and Civil Liberties on May 1, 2017. (*See id.*) ICE has no record, however, indicating Plaintiffs formally filed a complaint. (Declaration of Robert A. Ramey ("Ramey Decl.") ¶¶ 2–3, ECF No. 9-1.) On May 2, 2017, DHS emailed Escamilla explaining that they lacked jurisdiction over his allegations. (*See* Compl., Ex. 11.)

Plaintiffs then contacted the DHS Office of Professional Responsibility ("OPR") on July 27, 2017. (*Id.* ¶ 36.) They expressed their concerns to Russell Simons ("Simons"), OPR Resident Agent in Charge. (*Id.* ¶¶ 37–38; Mot. 3.) Simons initiated an investigation. (Compl. ¶ 39.) Between August 3 and August 4, 2017, there were multiple follow-up exchanges between Simons and Plaintiffs. (*Id.* ¶¶ 39–46; Mot. 4.) Simons explained Gibson's inability to proceed with their claims in light of the adverse civil judgment. (Compl. ¶¶ 41–42.) Plaintiffs explained the circumstances of the civil case's dismissal, and Simons agreed to speak to Gibson about this issue again. (*Id.* ¶ 45.) After further discussion with Gibson, on August 4, 2017, Simons called and reiterated to Plaintiffs that they would be required to return to federal civil court to receive a favorable decision in the Colorado action before DHS could continue pursuing their claims, as the standing decision left the validity of Plaintiffs' trademark ownership at issue. (*Id.* ¶ 46; Mot. 4.)

On October 24, 2017, Plaintiffs filed a complaint against Defendants for federal and state civil rights violations, federal due process violations, federal equal protection violations, intentional infliction of emotional distress, and negligent infliction of

---

[2] The Court recognizes and agrees that the date listed in the Complaint with regard to this additional information, April 11, 2016, is properly read in context as April 11, 2017. (*Id.* ¶ 32; Mot. 3.)

emotional distress, seeking damages as well as injunctive and declaratory relief.  (*See generally* Compl.)  On January 29, 2018, Defendants moved to dismiss the case pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (*See generally* Mot.)  Defendants' Motion is now before the Court.[3]

## III.    LEGAL STANDARD

### A.    Subject Matter Jurisdiction

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "Jurisdictional dismissals in cases premised on federal-question jurisdiction are exceptional . . . ."  *Sun Valley Gasoline, Inc. v. Ernst Enters.*, 711 F.2d 138, 140 (9th Cir. 1983).  "Rule 12(b)(1) jurisdictional challenge may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  A facial attack is based on the challenger's assertion that allegations in the complaint are "insufficient on their face to invoke federal jurisdiction."  *Safe Air*, 373 F.3d at 1039.  A factual attack disputes the validity of allegations that, if true, would invoke federal jurisdiction.  *Id.*  In resolving a factual attack, the Court "need not presume the truthfulness of the plaintiffs' allegations."  *White*, 227 F.3d at 1242.  "[T]he district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Safe Air*, 373 F.3d at 1039.  This evidence includes "affidavits furnished by both parties."  *Savage v. Glendale Union High Sch. Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Id.*

---

[3] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

**B.    Failure to State a Claim**

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In considering a motion to dismiss for failure to state a claim, "the court must accept as true all factual allegations in the complaint, as well as all reasonable inferences that may be drawn from such allegations."  *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000).  To be entitled to this presumption of truth, "allegations in a complaint . . . may not simply recite the elements of a cause of action[] but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  All such allegations are to be construed in the light most favorable to the nonmoving party. *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).  The "factual allegations that are taken as true must [also] plausibly suggest an entitlement to relief."  *Levitt,* 765 F.3d at 1135.  To determine this, the Court relies upon its judicial experience and common sense.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *United States v. Corinthian Colls.*, 655 F.3d 985, 991 (9th Cir. 2011).

**C.    Leave to Amend**

Under Rule 15 of the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within twenty-one days of serving or, if the pleading requires a responsive pleading, within twenty-one days of service of a responsive pleading or service of a Rule 12 motion.  *See* Fed. R. Civ. P. 15(a).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  Fed. R. Civ. P. 15(a)(2).  The Court should freely grant leave to amend when justice requires.  *Id.*  "This policy is to be applied with extreme liberality."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).  In assessing the appropriateness of leave to amend, the Court considers "undue

delay, bad faith dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party of allowance of the amendment, and futility of the amendment . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The opposing party bears the burden of showing why leave to amend should not be granted. *DCD Programs, Ltd. v. Leighton*, 833 F.3d 183, 187 (9th Cir. 1987).

# IV.   DISCUSSION

Under Rule 12, a party may bring a motion to dismiss based on seven different grounds. *See* Fed. R. Civ. P. 12(b). Accordingly, Defendants request that Plaintiffs' complaint be dismissed for lack of subject matter jurisdiction and failure to state a claim. (*See generally* Mot.)

**A.   Subject Matter Jurisdiction**

"[D]istrict courts . . . have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Generally, "[w]hether the complaint states a cause of action on which relief could be granted is a question of law[,] and just as issues of fact[,] it must be decided after and not before the court has assumed jurisdiction over the controversy." *Bell v. Hood*, 327 U.S. 678, 682 (1946). The only exceptions to this are "where the alleged claim under the [C]onstitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such claim is wholly insubstantial and frivolous." *Safe Air*, 373 F.3d at 1039 (quoting *Bell*, 327 U.S. at 682.); *cf. Sun Valley Gasoline*, 711 F.2d at 140 ("[A] jurisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action.").

In this case, Plaintiffs' assertion of federal question jurisdiction appears to be predicated upon claims brought under 42 U.S.C. § 1983 for violations of civil rights, due process, and equal protection, and the Federal Tort Claims Act ("FTCA"), 28

U.S.C. § 1346, for civil right violations and tortious conduct. (Compl. ¶¶ 76–112.) Defendants assert Plaintiffs fail to satisfy these requirements on several grounds.

### 1. Preliminary Considerations

When filing a complaint, Rule 8 of the Federal Rules of Civil Procedure requires that the pleader make clear which claims are brought against which defendants. *See Hearns v. San Bernardino Pol. Dep't*, 530 F.3d 1124, 1129 (9th Cir. 2008). Defendants assert that Plaintiffs failed to comply with Rule 8 by failing to identify whether each claim is brought against the United States, DHS, or both. (Mot. 6.) Courts frequently find that this requirement is unsatisfied in litigation involving a large number of defendants. *See, e.g.*, *Hearns*, 530 F.3d at 1132 (looking to whether clarity existed as to which claims were brought against which defendants); *McHenry v. Renne*, 84 F.3d 1172, 1174 (9th Cir. 1996) (affirming dismissal of a case where complaint failed to specify which of twenty named defendants were liable for which claims). Here, there are only two named defendants. (*See* Compl.) In each claim for relief, Plaintiffs reference "Defendants". (*Id.* ¶¶ 77, 83, 91, 99, 103, 107, 111.) In light of this, the Court presumes that Plaintiffs intended to allege all claims against both the United States and DHS and proceeds with its analysis accordingly.

### 2. 42 U.S.C. § 1983

Plaintiffs' first three claims—alleging violations of civil rights, due process, and equal protection, respectively—are brought pursuant to 42 U.S.C. § 1983. (*See* Compl. ¶¶ 75–96.) In order to establish jurisdiction and bring a cause of action under section 1983, a plaintiff must show (1) some person deprived him of a federal right; and (2) that the person depriving him of that right acted under color of *state* law. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Claims brought under this provision are to be brought against a *person,* not an entity. 42 U.S.C. § 1983. A federal agency does not constitute a "'person' within the meaning of this provision." *Jachetta v. United States*, 653 F.3d 898, 908 (9th Cir. 2011). Here, all three section 1983 claims are brought against two entities, the United States and DHS; thus, Defendants, by their

very nature, cannot be subjected to liability under this provision.  (*See* Compl. ¶¶ 5–7.)  Plaintiffs' section 1983 claims are precisely the sort of "wholly insubstantial and frivolous" claims which properly warrant dismissal under Rule 12(b)(1).  *Safe Air*, 373 F.3d at 1039; *see also* Fed. R. Civ. P. 12(b)(1).

Furthermore, it is a well-established that the "United States, as sovereign, is immune from suit save as it consents to be sued."  *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  The same principles apply when a federal agency is sued.  *Villegas v. United States*, 926 F. Supp. 2d 1185, 1195 (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687–88 (E.D. Wash. 2013)).  Waivers of sovereign immunity must be clear and unequivocal.  *Id.*  No such waiver existed here.  *Gibson*, 781 F.2d at 1343.  Section 1983 "provides no right of action against federal [actors]."  *Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1019 (9th Cir. 1999).  Plaintiffs themselves acknowledge that there has been no waiver of sovereign immunity in this instance and do not allege that the actions upon which their complaint is predicated occurred under color of state law.  (*See* Opp. 2, ECF No. 10.)  Accordingly, Plaintiffs' Claims 1–3 are also precluded by sovereign immunity.

Plaintiffs also bring these claims against the United States "on behalf of" Simons and Gibson in their official capacities.  (Compl. ¶¶ 6–7.)  As a preliminary matter, this is improperly pleaded.  Official-capacity suits brought under section 1983—while treated in practice as suits against the individual official's employing agency—must be pled against individuals.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Thus, this action should have been brought against Simons and Gibson in their official capacity as government employees.

However, even if properly pleaded, "[f]ederal officers acting under *federal* authority are immune from suit under section 1983."  *Gibson*, 781 F.2d at 1343.  Plaintiffs specifically sought to bring suit against Simons and Gibson "in [their] official capacity" as federal employees.  (Compl. ¶¶ 6–7.)  Thus, even if pled against

Simons and Gibson, these claims could not proceed. The Court **DISMISSES** Claims 1–3 for lack of subject matter jurisdiction.

### 3. Federal Tort Claims Act

"The FTCA authorizes private tort actions against the United States 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Jachetta*, 653 F.3d at 904 (citing 28 U.S.C. § 1346(b)(1)). However, "waivers of sovereign immunity must be construed in favor of the sovereign." *Foster v. United States*, 522 F.3d 1071, 1074 (9th Cir. 2008). The FTCA is the *only* remedy for tortious conduct by the United States and *only* the United States may be sued under it. *F.D.I.C. v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998). Such suits may be brought on account of the actions of federal agencies. *Id.* However, the FTCA does not waive sovereign immunity as to these agencies, and accordingly, agencies themselves cannot be sued pursuant to the FTCA. *Id.* Thus, Plaintiffs lack subject matter jurisdiction to sue DHS with regard to Claims 4–7 for civil rights violations, intentional infliction of emotional distress, negligent infliction of emotional distress, and injunctive and declaratory relief under California law. The claims brought pursuant to the FTCA may only be brought against Defendant United States, if they may be brought at all.

### a. Exhaustion of Administrative Remedies

The FTCA only provides jurisdiction for tort suits against the government when a plaintiff has fully exhausted their administrative remedies. *D.L. v. Vassilev*, 858 F.3d 1242, 1244 (9th Cir. 2017); *Avery v. United States*, 680 F.2d 608, 609 (9th Cir. 1982). This means that they must first file a claim with the agency allegedly at fault. *Id.* A satisfactory claim (1) "give[s] an agency sufficient notice to commence investigation" and (2) "places a value on the claim." *Shipek v. United States*, 752 F.2d 1352, 1353 (9th Cir. 1985); *see also Avery*, 680 F.2d at 610 ("[A] skeletal claim form, containing only the bare elements of notice of accident and injury and a sum certain representing damages, suffices to overcome an argument that jurisdiction is lacking.").

The FTCA authorizes Plaintiffs to bring a tort action only after an agency claim has been conclusively denied or six months elapse without a final disposition of the agency claim. *Jerves v. United States*, 966 F.2d 517, 519 (9th Cir. 1992). It is the Plaintiffs' burden to establish initial subject matter jurisdiction under the FTCA. *Sabow v. United States*, 93 F.3d 1445, 1451 (9th Cir. 1996), *as amended*, Sept. 26, 1996.

Plaintiffs allege that they filed a formal complaint with the DHS Office for Civil Rights and Civil Liberties on May 1, 2017. (*See* Compl. ¶ 33.) However, in reviewing a Rule 12(b)(1) motion, the Court looks to all available evidence. *Safe Air*, 373 F.3d at 1039. ICE asserts by affidavit that there is no record of a formal complaint. (Ramey Decl. ¶¶ 2–3.) The only evidence that Plaintiffs provide in support of their assertion is an email response from DHS. (Compl., Ex. 11.) While this indicates that some contact did occur between Plaintiffs and Defendants on the dates in question, it does not establish that a formal complaint was filed or that, if such a complaint did exist, it met the requirements for a claim sufficient to satisfy the FTCA. (*See id.*) Escamilla did also contact Simons on August 11, 2017 via US Express Mail, sending a letter with the subject "Re: Greenway Nutrients ® federal law enforcement misconduct complaint." (*Id.*, Ex. 12.) However, the letter fails to allege any amount of damages. (*See id.*) Thus, it still does not constitute a satisfactory formal complaint. Plaintiffs fail to establish that they exhausted their administrative remedies, and the Court is therefore precluded from exercising jurisdiction over these claims pursuant to the FTCA. Accordingly, dismissal pursuant to Rule 12(b)(1) is appropriate as to all state law claims in regard to the United States, in addition to DHS.

### b. Discretionary Function Exception

As a secondary matter, even if the Court were to grant Plaintiffs' leave to amend—and Plaintiffs provided additional support sufficient to establish the existence of a formal complaint—Plaintiffs' claims could still be barred by the discretionary

function exception if they are based upon the "exercise or performance or the failure to exercise or perform a discretionary function." *See* 28 U.S.C. § 2680(a). "This exception prevents judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Gonzales v. United States*, 814 F.3d 1022, 1027 (9th Cir. 2016). Where it applies, no federal subject matter jurisdiction exists. *Sabow v. United States*, 93 F.3d 1445, 1451 (9th Cir. 1996). "The United States bears the ultimate burden of proving the applicability of the discretionary function exception." *Sabow*, 93 F.3d at 1451.

The Supreme Court has established a two-step analysis for determining the exception's applicability. *Bailey v. United States*, 623 F.3d 855, 860 (9th Cir. 2010). First, the Court considers "whether the challenged actions involve 'an element of judgment or choice.'" *Sabow*, 93 F.3d at 1451. It is well-established that "[t]he decision whether or not to prosecute a given individual is a discretionary function for which the United States is immune from liability." *Gen. Dynamics Corp. v. United States*, 139 F.3d 1280, 1283 (9th Cir. 1998); *see also Dichter-Mad Family Partners, LLP v. United States*, 707 F. Supp. 2d 1016, 1037 (C.D. Cal. 2010), *aff'd,* 709 F.3d 749 (9th Cir. 2013) ("[R]efusal to prosecute is a classic illustration of a decision committed to agency discretion."). Likewise, "[t]he investigation of crime involves policy judgments at the core of the executive branch." *Gonzales v. United States*, 814 F.3d 1022, 1032 (9th Cir. 2016). This remains true, even where a plaintiff asserts allegations of negligence against the involved agency. *See Gen. Dynamics*, 139 F.3d at 1283. Where the challenged actions do involve an element of choice or judgment, the Court then looks to "whether it is of the kind that the discretionary exception was designed to shield." *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991). If it involves consideration of social, economic, or political policy, then the exception applies. *Sabow*, 93 F.3d at 1451.

Looking to the first prong of the test, Plaintiffs' state law claims center around the allegation that Defendants violated Plaintiffs' rights by refusing to reopen the investigation into Greenways' claims after Plaintiffs came forward with new evidence. (*See* Compl. ¶ 54.) As Defendants explained to Plaintiffs, they chose not to further investigate Plaintiffs' claims due to the negative judgment in the Colorado action. (*See id.* ¶ 27.) DHS has limited resources available and must use its judgment to determine where these resources are best used. *See Dichter-Mad*, 707 F. Supp. 2d at 1038 ("Courts cannot intelligently supervise the [agency's] allocation of its staff's time, because although judges see clearly the claim the [agency] has declined to redress, they do not see at all the tasks the staff may accomplish with the time released."). DHS weighed the impact of allotting these scarce resources to a criminal investigation in which a civil court had already ruled against the victims and found, quite reasonably, that this would not be in the best interest of the public. (*See* Mot. 12.) The Court finds that DHS's decision not to pursue further investigation of Plaintiffs' claims clearly involved an element of discretion and judgment. *See Gonzales,* 814 F.3d at 1032.

The question then becomes whether DHS's exercise of judgment implicates social, economic, and political policy. Decisions involving investigation and prosecution inherently require consideration of stewardship of judicial resources as well as concerns regarding safety and crime prevention. Defendants made a judgment call based upon what they believe will be in the public interest in light of the relevant social, economic, and political concerns. Thus, the second prong is also satisfied. Accordingly, the Court **DISMISSES** Plaintiffs' state law claims, Claims 4–7, for lack of subject matter jurisdiction.[4]

---

[4] These claims may also be precluded by the statute of limitations. (Mot. 6–7.) All tort claims brought against the United States must be brought within two years of their accrual, or they are forever barred. 28 U.S.C. § 2401(b). "Although ordinarily the defendant bears the burden of proving an affirmative statute of limitations defense, here the statute of limitations is jurisdictional, and, [w]hen subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Kingman Reef Atoll*

## B. Failure to State a Claim

Defendants also bring their Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim. To properly bring a claim, Rule 8(a) of the Federal Rules of Civil Procedure requires the plaintiff to file a complaint containing "a short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 667–68. This is intended to "give the defendant fair notice" of the plaintiff's claims and the grounds for them. *Updike v. Multnomah Cnty.*, 870 F.3d 939, 952 (9th Cir. 2017).

### 1. Federal Claims

Plaintiffs themselves acknowledge that they cannot properly bring an action under 42 U.S.C. § 1983 for Claims 1–3, since section 1983 actions can only be brought against individuals. (Opp'n. 2, ECF No. 10); *see* 42 U.S.C. § 1983. Additionally, even if amended to be pled against Simons and Gibson "in their official capacities," section 1983 actions require that the Plaintiffs establish that the Defendants' violation occurred under color of state law. Plaintiffs make no such allegations here and do not assert that they would or could, if given leave to amend. (*See* Compl.; Opp'n.) Accordingly, Claims 1–3 are also properly **DISMISSED** under Rule 12(b)(6) for failure to state a claim.

### 2. State Law Claims

As to Claims 4–7, brought pursuant to the FTCA for alleged violations of California state law, claims brought under the FTCA may only be brought against the United States. *Craft,* 157 F.3d at 706. Thus, as already established, all claims brought under the FTCA against DHS automatically fail and need not be further considered.

---

*Invs., L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008) (internal citation omitted). Here, Plaintiffs assert the conduct leading to their emotional distress claims arose between July 27, 2017 and August 4, 2017. (Compl. ¶¶ 103, 107.) However, much of the conduct upon which Plaintiffs rely occurred outside of that period, going back as far as March 2015, which is unquestionably outside of the statute of limitations. (*See id.* ¶ 13.) Accordingly, as Plaintiff failed to clearly establish that the claims arose solely out of conduct occurring *within* the statute of limitations period, the Court could also dismiss the state law claims on that ground.

The Court has further recognized that the discretionary function exception entirely precludes suit under the FTCA against the United States in this case. However, even if Plaintiffs could amend their complaint to in some way avoid the exception, Plaintiffs' claims should still be dismissed if the central allegations upon which they are founded do not establish the underlying claims asserted. *See* Fed. R. Civ. P. 12(b)(6).

Plaintiffs first assert a claim for violation of the Bane Act, Cal. Civ. Code § 52.1, which imposes liability on all individuals who interfere or attempt to interfere by threat, intimidation, or coercion, with "the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United State or laws of the Constitution or laws of [California]." Cal. Civ. Code § 52.1(a). Such coercion or intimidation must be "deliberate or spiteful." *Shoyoye v. Cnty. of Los Angeles*, 203 Cal. App. 4th 947, 959 (2012). Plaintiffs predicated the Bane Act claim on the Fourth and Fifteenth Amendments of the U.S. Constitution, as well as sections of the California Constitution. (Compl. ¶ 98.) However, the Complaint never alleges that Plaintiffs were threatened, intimidated, or coerced in any way by the United States or its agents. (*See generally id.*) The strongest allegation Plaintiffs make is that Gibson "scolded" Escamilla for becoming frustrated with the case's slow progress. (*Id.* ¶ 24.) Plaintiffs' own tone was far more coercive and threatening than that of Gibson and Simon throughout the entirety of their interactions. (*See, .e.g., id.*, Ex. 9–12.) Accordingly, Plaintiffs' Bane Act claim fails.[5]

Plaintiffs also assert claims for Intentional Infliction of Emotional Distress (IIED) and Negligent Infliction of Emotion Distress (NIED). (*Id.* ¶¶ 102–09.) An IIED claim requires (1) extreme and outrageous conduct by the defendant with the

---

[5] Additionally, the FTCA authorizes only a cause of action for violations of *state* law, not federal law. *Mendoza v. United States*, Case No. 15cv1528-JAH (BGS), 2017 WL 4286907 at *7 (S.D. Cal. Sept. 27, 2017). Thus, there is no subject matter jurisdiction under the FTCA for Bane Act violations predicated on violations of the Fifth and Fourteenth Amendments. *Mendoza*, 2017 WL 4286907 at *7 ("By definition, [plaintiffs] cannot allege . . . that state law [is] the source of liability for a claim [against the United States] alleging the deprivation of a federal constitutional right.").

intent of causing, or reckless disregard for the probability of causing, emotional distress; (2) actual suffering of severe emotional distress by the plaintiff; and (3) actual and proximate causation of that distress by the defendant's outrageous conduct. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). To meet the extreme and outrageous standard, the behavior must be "so extreme as to exceed the bounds of that usually tolerated in a civilized community." *Id.* at 1050–51. NIED does not require intentionally outrageous conduct but instead "is a form of the tort of negligence, to which the elements of duty, breach of duty, causation, and damages apply." *Huggins v. Longs Drug Stores Cal., Inc.*, 6 Cal. 4th 124, 129 (1993).

Plaintiffs' pleadings fail to demonstrate the negligence necessary to establish NIED and do not begin to approach the high bar of IIED's outrageous conduct. Plaintiffs summarily assert that the Greenway defendants' infringement caused Escamilla severe emotional distress. (Compl. ¶ 22.) However, this in no way established that *Defendants* caused emotional distress to Plaintiffs. Plaintiffs also allege Defendants denied Plaintiffs' due process and refused to consider new evidence. (*Id.* ¶¶ 103–05.) However, Plaintiffs fail to allege specific facts that establish a violation of due process. (*See id.*) Moreover, as the Court already noted, Defendants *did* consider Plaintiffs' allegedly new evidence and found, as a matter of policy, it was not sufficient to authorize a renewal of the investigation.[6] (*Id.* ¶¶ 40–44.) Accordingly, Plaintiffs allege no specific facts demonstrating negligence on the part of Defendants, let alone the intentional or reckless behavior necessary to establish IIED. Even if Plaintiffs could somehow overcome the discretionary function exception, their NIED and IIED claims would still fail.

Plaintiffs' seventh alleged claim is merely a request for declaratory and injunctive relief. (*See Id.* ¶ 110–12.) It is well established that the FTCA does not

---

[6] Additionally, Defendants correctly note that Plaintiffs' had knowledge of their "new information" regarding Greenway's attorney as early as June 2013, if not earlier, and chose not to share it with law enforcement until they sought to produce "new evidence" to demand renewed attention for their case. (Declaration of Grace Y. Park ("Park Decl."), Ex. 4, ECF 9-2.)

submit the United States to injunctive or declaratory belief.  *Thompson v. U.S. Postal Serv.*, No. C 12-0301 PJH, 2012 WL 3583134, at *3 (N.D. Cal. Aug. 20, 2012); *see Moon v. Takisaki*, 502 F.2d 389, 390 (9th Cir. 1974).  Moreover, because all underlying claims also fail, Plaintiffs do not allege any claim for which such relief could be granted, even if such a request *could* be properly brought.  Thus, the seventh claim for relief is also dismissed.

In sum, even if Plaintiffs could successfully establish subject matter jurisdiction over their claims, all claims raised would still be properly **dismissed** for failure to state a claim under Rule 12(b)(6).

## C.  Appropriateness of Leave to Amend

Recognizing the inadequacies of Plaintiffs' complaint, the Court next turns to consider whether leave to amend is appropriate here.  Under Rule 15 of the Federal Rules of Civil Procedure, the Court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, courts need not give leave to amend when a complaint lacks merit entirely.  *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc).  To determine whether amendment should be granted, the Court considers (1) prejudice to the opposing party; (2) bad faith; (3) undue delay; (4) futility, and (5) previous amendment.  *DCD Programs*, 833 F.2d at 189 & n.3 (9th Cir. 1987).  "[F]utility of amendment can, by itself, justify denial of motion for leave to amend."  *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).  Here, there is no indication that amendment would prejudice the opposing party, is motivated in bad faith, or would cause undue delay—and Defendants do not attempt to assert the contrary.  (*See generally* Mot.; Reply, ECF No. 11.)  Rather, Defendants argue that amendment is entirely futile, as no alteration to the complaint could suffice to render Plaintiffs' claims valid.  (Mot. 17.)

### 1.  Current Claims

It has already been established that the Plaintiffs' claims under section 1983, as currently pleaded, must be dismissed for both lack of subject matter jurisdiction under

Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). Plaintiffs admit that no amendment could cure the fundamental problems that prohibit the claims brought pursuant to 42 U.S.C. § 1983. (Opp'n. 1–2.) Accordingly, the Court **denies leave to amend as to** Claims 1–3.

Plaintiffs also do not dispute that the FTCA does not provide subject matter jurisdiction over DHS, nor that the discretionary function exception bars asserting the alleged FTCA claims against the United States. (*See generally id.*) Plaintiffs argue, however, an amended complaint would enable them to properly bring the asserted state law claims against federal officers Simons and Gibson. (*Id.* at 2.) However, the FTCA is the only remedy for tortious conduct by the United States and only the United States may be sued under it. *Craft*, 157 F.3d at 706. Individual employees may not be sued pursuant to the FTCA, *id.*, and no "other civil action or proceeding for damages arising out of or relating to the same subject matter" may be brought against them. 28 U.S.C. § 2679(a). Thus, no claim may be brought against Gibson and Simons under the FTCA, and Plaintiffs provide no alternative grounds on which the claims may be asserted against them. Accordingly, all amendment to the state law claims is likewise futile. In light of this, the Court also **denies leave to amend** Claims 4–7.

### 2. *Bivens* Claim

Plaintiffs also request leave to amend in order to bring a new claim against Simons and Gibson, whom Plaintiffs intend to add as parties, under the implied right of action theory first established in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). (Opp'n 2.) "In *Bivens*, the Supreme Court recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Vega v. United States*, 881 F.3d 1146, 1152 (9th Cir. 2018). The court has recognized the appropriateness of *Bivens* claims in only three contexts: (1) police search and seizure in violation of the Fourth Amendment, *see Bivens*, 403 U.S. at 388; (2) gender discrimination by a congressman

in violation of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228 (1978); and (3) deliberate indifference toward a prisoner's medical needs in violation of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980).  "The Court has made clear that [further] expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1857 (2017).  Plaintiffs' attempt to assert a *Bivens* claim for civil rights and due process violations pursuant to the Fifth and Fourteenth Amendments would require just such expansion.  (Opp'n. 3.)

When considering whether Plaintiffs may bring a *Bivens* claim, the Court considers (1) whether the claim arises in a new *Bivens* context and if so, (2) whether special factors counsel hesitation in the absence of affirmative action by Congress. *Abbasi*, 137 S. Ct. at 1857, 1864.  A claim arises in a new context whenever it is "different in a meaningful way from previous *Bivens* cases decided by the Court." *Id.* at 1864.  Meaningful differences may include "the rank of officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how the officer should [have responded] . . . ; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion . . . into the function[]of other branches;" or the presence of factors not previously considered. *Id.* at 1860.  The Fourteenth Amendment has never been subject to a *Bivens* claim before.  *See id.* at 1857.  Moreover, the Fifth Amendment has never been the subject of a *Bivens* claim related to racial discrimination.  (*See* Compl. ¶ 30.); *c.f. Davis*, 442 U.S. at 228 (regarding a Fifth Amendment *Bivens* claim predicated on gender discrimination).  In addition, employees of DHS and ICE—the proposed Defendants offered by Plaintiffs—are a new class of defendants who have never been subjected to a *Bivens* suit.  (Opp'n 3); *Abbasi*, 137 S. Ct at 1857.  Thus, Plaintiffs' claims clearly arise in a new *Bivens* context.

The Court next looks to whether special factors counsel judicial hesitation.  *Id.* Judicial hesitation is appropriate where there are valid, alternative remedies available.

*See Vega*, 2018 WL 740184, at *6. This factor favors the defendants where Plaintiffs assert alternative claims for relief. *See id.* Even if the alternative claims fail due to inadequate pleading, this does not justify creation of a new *Bivens* remedy. *Id.* It is not the Court's burden to "prove the [P]laintiff's case for him or to be forced to create a new remedy through *Bivens.*" *Id.* Here, Plaintiffs attempt to bring claims under the FTCA and state law, in addition to this potential *Bivens* claim. (Compl.) They also sought alternative remedies by reporting "civil rights violations" to the DHS's Office for Civil Rights and Civil Liberties. (Compl. ¶ 33, Ex. 11.) Thus, the availability of alternative remedies to Plaintiffs' counsels against the creation of a *Bivens* remedy in this case.

Moreover, the purpose of a *Bivens* remedy is not to "alter an entity's policy." *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001). Plaintiffs' primary allegations center on their frustration with the investigative policies of DHS and ICE, and Gibson and Simons' discretionary choices not to further pursue Plaintiffs' claims in light of those policies. (*See* Compl. ¶ 94.) To create a *Bivens* claim specifically tailored to this instance would call into question "the formulation and implementation of a[n] . . . executive [agency] policy . . . . The litigation process might also implicate the discussions and deliberations that led to the formation of the particular policy, requiring [the Court] to interfere with sensitive Executive Branch functions." *Abbasi*, 137 S. Ct. at 150. Since permitting a *Bivens* claim in this instance would interfere with the discretionary functions of ICE and DHS and force an alteration of agency policy, this consideration also clearly counsels against the creation of a *Bivens* remedy in this instance. In light of the significant concerns counseling against extending *Bivens* to the current context, the Court declines to permit Plaintiffs to amend to add a *Bivens* claim.

In addition, even if facts supporting a *Bivens* claim could be alleged, the claim would still be precluded by qualified immunity. Qualified immunity protects all government officials who are not "plainly incompetent or . . . knowingly violat[ing]

the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). To determine whether it applies, the Court first considers whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the answer is yes, the Court then considers whether "the right was clearly established . . . in light of the specific context of the case." *Id.* Only when both these criteria are met may qualified immunity be waived. *Id.*

Plaintiffs contend that Defendants violated their constitutional rights by "refus[ing] to provide any type of federal law enforcement intervention whatsoever" and "refus[ing] to investigate Plaintiffs' claims." (Opp'n 3–4.) However, Defendants did initially intervene. (*See* Compl. ¶¶ 14, 23.) Moreover, they consistently communicated with Plaintiffs, informed them of their options, and explained why they could not further pursue Plaintiffs' claims until Plaintiffs themselves rectified the issues raised by the negative judgment in the Colorado action. (*See id.* ¶ 27.) Plaintiffs provide no compelling evidence of a constitutional violation here. Plaintiffs further attempt to predicate their claims on the Defendants' refusal to prosecute. (*See, e.g.*, Compl. ¶ 21.) However, there is no constitutional right to federal criminal prosecution for vindication of personal injuries—nor do Plaintiffs provide any case law or argument asserting that there is. *See Wyatt v. Cole*, 504 U.S. 158, 162 (1992) (noting that the civil cause of action under § 1983 was created, in part, because victims did not have a means of obtaining relief outside of it, including under criminal law); (*see generally* Compl.; Opp'n.) Plaintiffs fail to establish that Defendants violated their constitutional rights in any way, and they certainly do not meet the secondary "clearly established" requirement. Accordingly, even if Plaintiffs could amend their Complaint to successfully allege a *Bivens* claim, it would necessarily fail because both officers are protected by qualified immunity. Thus, any amendment to allege a *Bivens* claim would also be futile.

For this reason, the Court finds that allowing Plaintiffs leave to amend their complaint would be futile. The Court **denies leave to amend** as to all claims.

///
///
///
///
///
///
///
///
///

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim. (ECF No. 9.) The Court **DENIES leave to amend.** Plaintiffs' complaint is **DISMISSED with prejudice** as to all Defendants.

**IT IS SO ORDERED.**

April 4, 2018

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**